**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF ML-CFC COMMERCIAL MORTGAGE TRUST 2007-6, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-6, acting by and through CWCapital Asset Management LLC, its special servicer,

Plaintiff,

v.

FPG BRIDGEWATER OWNER ONE, LLC, FPG BRIDGEWATER OWNER TWO, LLC, FPG BRIDGEWATER OWNER THREE, LLC, STATE OF NEW JERSEY, AND "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100,

Defendants.

Civil Action No. 17-5454 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff U.S. Bank National Association, as Trustee for the registered holders of ML-CFC Commerical Mortgagee Trust Pass-Through Certificates, Series 2007-6's ("Plaintiff") Motion to Appoint a Receiver. (ECF No. 14.) FPG Bridgewater Owner One, LLC, FPG Bridgewater Owner Two, LLC, and FPG Bridgewater Owner Three, LLC (collectively "FPG" or "Borrower") opposed. (ECF No. 18.) In addition, the Court granted Frontier Acquisition, LLC ("Intervenor" or "Frontier") leave to intervene to oppose Plaintiff's Motion. (ECF No. 33.) Frontier also opposed the Motion (ECF No. 34), and Plaintiff replied (ECF Nos. 26, 36). The Court has carefully considered the parties' submissions and decides the

matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Plaintiff's motion is denied.

I. **Background**

FPG borrowed $37,950,000 (the "Loan") secured by a three-story office building in Bridgewater, New Jersey with 224,313 square feet of rentable space (the "Property"). (Decl. of Dina Bell ("Bell Decl.") ¶ 3, ECF No. 16; Decl. of Therese M. Reyes ("Reyes Decl. I") ¶ 3, ECF No. 17.) The Property is currently leased by a single tenant, (the "Tenant") which leases the entire three-story building, and its lease is set to expire in February 2021.[1]

Plaintiff is currently the holder of the note with respect to the Loan. (Bell Decl. ¶¶ 11-15.) On March 8, 2017, FPG defaulted on the Loan by not repaying the full amount on the maturity date. (Bell Decl. ¶¶ 16-17; Pl.'s Moving Br. 3, ECF No. 15.) On April 11, 2017, Plaintiff demanded payment of all outstanding amounts. (Bell Decl. ¶ 18.) Borrower failed to pay the outstanding amounts and currently owes $37,950,000 in principal plus other charges such as interest, late charges, and other sums provided for under the Loan documents. (*Id.* ¶ 20.)

Also around this time, FPG defaulted on a mezzanine loan held by Intervenor in the amount of $4,000,000 secured by 100% of the equity interests in FPG ("Equity Collateral"). (Mar. 12, 2018 Mem. Op. 1-2, ECF No. 33.) Intervenor intends to foreclose on the Equity Collateral through a UCC foreclosure sale, which would make Intervenor "the owner of the Equity Collateral and, thus, stand in the shoes of [FPG]." (*Id.* at 2.) Intervenor scheduled a UCC foreclosure sale for January 24, 2018; however, the sale has been indefinitely adjourned "due to financial

---

[1] The Bell Declaration claims that the lease terminates on September 30, 2020 (Bell Decl. ¶ 23); however, this appears at odds with other submissions that indicate a February 28, 2021 lease termination date. (FPG's Opp'n Br. 3, 5, 7, ECF No. 18; Lofredo Decl. ¶ 11, ECF No. 19; Intervenor's Opp'n Br. 2, ECF No. 34.) On Reply, Plaintiff seemingly agrees that the lease runs through February 28, 2021. (Pl.'s Reply Br. 10, ECF No. 26.)

considerations and other issues that may have an impact on the value of the property." (Intervenor's Opp'n Br. 2, ECF No. 34.)

## II. Parties' Positions

Plaintiff argues that it is entitled to the appointment of a receiver pursuant to the terms of the mortgage document, which states that upon a default by the Borrower, "Lender may determine, in its sole discretion . . . [to] apply for the appointment of a receiver . . . of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Borrower. . . ." (Pl.'s Moving Br. 5 (citing Bell Decl. ¶ 21, Ex. F).) The document further provides that upon default, Borrower's license to receiver rents is automatically revoked and Borrower agrees to surrender possession of the Property to the Lender upon Demand, and Borrower may be required to pay rent in advance to Plaintiff "or any receiver appointed to collect rents." (*Id.* at 6) Plaintiff argues that in addition to the contractual entitlement to a receiver, a receiver is necessary to protect Plaintiff's security in the Property because the Property is leased by a single Tenant, whose "lease terminates on September 30, 2020, and Plaintiff is unaware of any efforts to negotiate an extension of the lease with the [T]enant or market the Property." (*Id.* at 6-7 (citing Bell Decl. ¶ 23).) Plaintiff argues that "it appears that Borrower has no motivation to re-lease the Property" because it is a single purpose entity whose only asset is the Property and there is potentially no personal liability for the outstanding amounts. (*Id.* at 7.)

In opposition, FPG argues that Tenant has been paying gross rent directly to Plaintiff for more than a year, and that FPG Management LLC operates and maintains the property. FPG Management LLC and a related company, FPG Texas Management, LP, are currently managing more than 6,500,000 square feet of commercial space. (FPG's Opp'n Br. 3, ECF No. 18.) The payments to Plaintiff show that there are sufficient funds to pay the Property's expenses, plus a

3

reserve balance of $1,522,411.92. (*Id.* at 4.) FPG argues that the prevailing legal authority indicates that a receiver is not appropriate and, in fact, appointing a receiver is likely to hurt the value of the property. (*Id.*) FPG further argues that the resulting change in management, additional expense, and "stigma" associated with a receiver would disrupt the relationship with Tenant and "undermine ongoing efforts to extend the existing lease . . . at market rates." (*Id.* at 5.) FPG argues that it has a good reputation in the industry and is motivated to preserve its reputation and the value of the Property, and Plaintiff "has no information or justification for allegations that the Mortgagors will abandon the Property or discontinue the professional management." (*Id.* at 6.)

Intervenor also opposes the request to appoint a receiver. Intervenor argues that: the Property is leased through February 2021 and, therefore, there is no urgency to the request; there is no evidence that the property is at risk or jeopardy of deterioration; there is no allegation that rent is not being received; and Intervenor intends to retain the same affiliate to manage the property and "attempt to re-position the underperforming Property as its affiliates have done successfully" in the past. (Intervenor's Br. 3, ECF No. 34.) Intervenor also argues that retaining a receiver with no economic stake in the Property to engage in lease renewal discussions with Tenant will be confusing, will jeopardize Intervenor's ability to structure the type of lease it needs to stabilize the Property, will "embolden [Tenant] to seek significant concessions," and will result in unnecessary additional expense. (*Id.* at 4.)

### III. <u>Analysis</u>

"A district court, in its discretion, may appoint a receiver to collect rents and profits and manage the property during the pendency of a foreclosure proceeding." *United States v. Berk &*

4

*Berk*, 767 F. Supp. 593, 597 (D.N.J. 1991).[2] "The remedy is a drastic one, and the power to appoint a receiver is one that should be exercised with great caution." *Wells Fargo Bank, N.A. v. Lichter Gateway IV, LLC*, 2017 WL 5957072, at *5. Appointing a receiver "is appropriate only in the face of compelling circumstances and in the absence of a less drastic remedy." *Id.* (citing *Leone Indus. v. Associated Packaging, Inc.*, 795 F. Supp. 117, 120 (D.N.J. 1992)). In the context of a mortgage foreclosure, the Court's analysis is guided by the following considerations: whether the property is inadequate security for the loan; whether there is a mortgage contract clause granting the mortgagee the right to a receiver; the continued default of the mortgagor; the probability that foreclosure will be delayed; the unstable financial status of the mortgagor; and the misuse of project funds by the mortgagor." *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 614 (D.N.J. 2012) (citing *United States v. Berk & Berk*, 767 F. Supp. 593, 597 (D.N.J. 1991)). The District Court has broad discretion and no one factor is dispositive. *Id.* (citing *Canada Life Assurance Co. v. Alfred R. LaPeter*, 563 F.3d 837, 845 (9th Cir. 2009)).

As an initial matter, the Court considers Plaintiff's argument that it is contractually entitled to a receiver. The mortgage contract provides that in the event of default, Plaintiff may "apply for the appointment of a receiver." The provision at issue is very similar to the provision in *Lichter*. As the Court found in *Lichter*, the right to "apply" for the appointment of a receiver "falls short of a full, self-executing consent to appointment of a receiver for any and all purposes upon default."

---

[2] Intervenor argues that the analysis should be governed by state substantive law, not federal common law, on which Plaintiff relies. (Intervenor's Opp'n Br. 4-6.) Intervenor acknowledges that there is conflicting authority on this issue, but urges the Court to apply state substantive law. (*Id.* at 4.) As noted by *Wells Fargo Bank, N.A. v. Lichter Gateway IV, LLC*, No. 17-2036, 2017 WL 5957072, at *6 (D.N.J. Dec. 1, 2017), the weight of authority appears to favor federal law. In any event, however, just as in *Lichter*, the parties "have not identified any significant difference between state and federal standards" and the Court would reach the same result under either standard.

5

*Lichter*, 2017 WL 5957072, at *7. As the *Lichter* Court also noted, however, the provision has to mean something more than the "excessively literal approach, which would reduce [it] to an illusory promise (after all, anybody can *apply* for anything)." (*Id.* (emphasis in original).) While the Court gives consideration to the parties' inclusion of this provision in the contract, the provision is not dispositive and the circumstances here do not warrant the drastic remedy of a receiver. *See Lichter*, 2017 WL 5957072, at *5 (citing 12 Wright, Miller, Kane & Marcus, Federal Practice and Procedure, § 2983 (2d ed.) ("The appointment of a receiver is considered to be an extraordinary remedy that should be employed with the utmost caution and granted only in cases of clear necessity to protect plaintiff's interests in the property.")).

Although Plaintiff attempts to argue that there are factors beyond the contractual provision that entitle it to a receiver, the Court finds that Plaintiff failed to carry its burden to demonstrate that it is entitled to the requested relief. Based on the record before the Court at this time, there does not appear to be any risk of waste, misuse, or other circumstance warranting the appointment of a receiver. Although the Loan may be inadequately secured, the arguments in opposition to the appointment of a receiver are heavily based on concerns that a receiver could further diminish the value of the property. As all parties appear to be working to increase the value of the Property, and there does not appear to be any emergent need for a receiver at the current time, the motion is denied. The Court, however, makes this determination without prejudice. If circumstances change to warrant the appointment of a receiver, Plaintiff may make any necessary application for relief to the Court.

## IV. Conclusion

Accordingly, for the above reasons, Plaintiff's Motion to Appoint a Receiver is denied, without prejudice. If circumstances change so as to warrant the appointment of a receiver, Plaintiff may make an appropriate application.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: May 17th, 2018